IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WALTER JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:21-CV-436-KFP |
| | ) |
| PROGRESSIVE CASUALTY | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand (Doc. 6) seeking an order remanding this case to the Circuit Court of Elmore County, Alabama. Defendant removed the action based on diversity jurisdiction under to 28 U.S.C. §§ 1332(a), 1441(a), and 1446(b)(1) and opposes Plaintiff's motion. Upon consideration of Plaintiff's Motion to Remand, it is ORDERED that the motion is GRANTED.

**I.     INTRODUCTION**

This action arises out of Plaintiff's claim for benefits under a homeowner's insurance policy issued by Defendant. Doc. 2 at 4; Doc. 2-1 at 3. After assessing the damage to Plaintiff's home, which occurred as the result of a tornado, Defendant disbursed $10,469.50 to Plaintiff and, following further negotiations, disbursed an additional $10,127.28, for a total of $20,596.78. *Id*. at 6. Due to a problem related to the date of issuance, Plaintiff returned checks from the first disbursement totaling $10,469.50, and thus far Defendant has not reissued those checks to Plaintiff. *Id*.

Assuming that Defendant reissues the $10,469.50 in funds that were returned, Plaintiff still disputes that $20,596.78 is adequate to cover the property damage to his home. *Id*. at 7. The Complaint contains a list of estimates Plaintiff has obtained to repair his home. The list, which totals $57,250, is not intended by Plaintiff to be exhaustive or inclusive of all repairs that may be necessary, as lumber prices could increase and the property damage could become exacerbated or worsened due to non-repair. *Id*. at 7–8. The Complaint contains a breach of contract claim seeking unspecified compensatory damages, including those for mental anguish and suffering, and a bad faith claim seeking unspecified compensatory and punitive damages. *Id*. at 8–11. The parties do not dispute that complete diversity exists. Doc. 6 at 2. Therefore, the only point of contention is whether the amount in controversy is met.

## II.   STANDARD OF REVIEW

Federal courts properly exercise diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). It is well-established that federal courts are of limited jurisdiction but have a strict duty to exercise the jurisdiction conferred on them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). On a motion to remand, the removing party bears the burden of proving that removal jurisdiction is proper. *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013). Congress has empowered federal courts to hear cases removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court originally. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*,

482 U.S. 386, 392 (1987). Other courts in this district have adequately explained these principles as follows:

> Where the complaint alleges unspecified damages, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). In some cases, the preponderance burden "requires the removing defendant to provide additional evidence demonstrating that removal is proper." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citing *Pretka*, 608 F.3d at 744). "In other cases, however, it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when 'the complaint does not claim a specific amount of damages.'" *Id*. (quoting *Pretka*, 608 F.3d at 754). In either event, the amount in controversy must be measured at the time of removal, not by events occurring afterward. *See Pretka*, 608 F.3d at 751.
>
> 2018 WL 1719715, at *1–2. Also, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court." *Simpson v. Primerica Life Ins., Co.*, 2015 WL 9315658, at *3 (M.D. Ala. 2015), *report and recommendation adopted*, 2015 WL 9413876 (M.D. Ala. 2015) (citing *Burns*, 31 F.3d at 1095).

*Tuskegee Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 3:18CV34-WKW-SRW, 2018 WL 4355857, at *2 (M.D. Ala. June 29, 2018), *report and recommendation adopted as modified*, No. 3:18-CV-34-WKW, 2018 WL 3873584 (M.D. Ala. Aug. 15, 2018) (quoting *Nelson v. Tuskegee Univ.*, No. 3:17-CV-512-WKW-WC, 2018 WL 1719715, at *1–2 (M.D. Ala. 2018)).

### III. DISCUSSION

To determine the amount in controversy, a court may "make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine

whether it is facially apparent that a complaint is removable." *Gamble v. Allstate Ins. Co.*, No. 2:21-CV-284-TFM-B, 2021 WL 4556024, at *3 (S.D. Ala. Oct. 5, 2021) (citing *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010)) (internal quotation marks and citations omitted). A court is not expected to "suspend reality or shelve common sense" but instead to use "judicial experience and common sense." *Id*. (citing *Roe,* 613 F.3d at 1062). However, without facts or specific allegations, the amount in controversy can be determined "only through speculation—and that is impermissible." *Id*. (citing *Pretka*, 608 F.3d at 753–54 (in turn citing *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1209 (11th Cir. 2007) (internal quotations omitted).

In removing this case, Defendant submitted no extrinsic evidence and instead contends the amount in controversy is facially apparent from the Complaint. Defendant argues that Plaintiff's repair estimates, when combined with the bad faith claim and request for mental anguish and punitive damages, exceeds $75,000. Doc. 13 ¶¶ 12–15. To support this argument, Defendant states that Alabama courts "have routinely allowed compensatory and punitive damages awards in excess of $75,000.00." It cites two cases with sizeable punitive damages awards, *Ford Motor Co. v. Sperau*, 708 So. 2d 111 (Ala. 1997) ($6 million in punitive damages and $2.5 million in compensatory damages for mental anguish in fraud case) and *First Com. Bank v. Spivey*, 694 So. 2d 1316 (Ala. 1997) ($450,000 in damages for emotional distress in fraud case), in addition to *Jackson v. American Banker Ins. Co. of Fla.*, 976 F. Supp. 1450 (S. D. Ala. 1997), a case that reviewed the "history of tremendously large punitive damages verdicts in Alabama." Doc. 13 ¶ 16. Defendant also points to Ala. Code § 6-11-21, which limits punitive damages to no more

4

than three times the compensatory damages or $500,000.00, whichever is greater, and concludes that the punitive damages award in this case "could be as much as $171,750.00" (three times the repair estimate of $57,250.00).[1] *Id*. at ¶ 18.

Defendant then asserts that, "[i]n similar cases, the Eleventh Circuit has found that the potential punitive damage exposure alone is enough to satisfy the amount in controversy requirement." Doc. 13 ¶ 18 (emphasis in original). For this proposition, Defendant cites *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 927 (11th Cir. 2019) (in turn quoting *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014)), but Defendant's reliance on *Anderson* is puzzling. In that case, the defendant appealed from the district court's order remanding the putative class action back to a Georgia state court. *Anderson*, 943 F.3d at 920. The issue was whether the defendant had met its burden of showing that the amount in controversy exceeded $5 million, as required by the Class Action Fairness Act (CAFA). *Id*. First, unlike ordinary removals, CAFA removals do not carry a presumption against removal. *Id*. at 925. Second, the amount-in-controversy determination

---

[1] Although Defendant uses the total amount of the repair estimates listed in the Complaint, more than $10,000 of this amount has already been paid to Plaintiff. Therefore, the repair estimates place approximately $47,000 in controversy. *See Tall v. Fed. Ins. Co.*, 2020 WL 6484106, at *8 (M.D. Fla. Aug. 27, 2020), *report and recommendation adopted,* 2020 WL 5887647 (M.D. Fla. Oct. 5, 2020) (stating that pre-suit payments and deductibles do not ordinarily constitute amounts in controversy for purposes of removal) (citing *Koester v. State Farm Ins. Co.*, No. 7:12-cv-02528-JEO, 2012 WL 5265783, at *5 (N.D. Ala. Oct. 22, 2012) ("[W]hen an insurer makes pre-suit payments towards an insured's claim, such amounts are not 'in controversy' and thus are not included when determining whether the jurisdictional threshold has been met.")) Further, although Defendant points out that Plaintiff has indicated that the cost of the listed repairs could increase if lumber prices rise and the damage worsens due to non-repair, any argument concerning *future* increases is necessarily speculative and, therefore, unpersuasive when determining the amount in controversy at the time of removal. *Pretka*, 608 F.3d at 772 (stating jurisdictional determination is based only on facts as they exist at time of removal).

turned on whether the value of the policies at issue, which plaintiffs sought to have reinstated, should be included in measuring the amount in controversy. The Court noted that it had "long held that when the validity of a life insurance policy is at issue in a case, the face value of the insurance policy is the amount in controversy," and, further, when a plaintiff seeks equitable relief to restore a lapsed policy, the face value of the policy is the amount in controversy. *Id*. at 925–26. The *Anderson* court did not discuss punitive damages, and it did not find that potential punitive damages exposure alone is enough to satisfy the amount-in-controversy requirement.

Under Alabama law, "[p]unitive damages are not awarded because the injured party is entitled to them as a matter of right; they are awarded as a punishment to the wrongdoer and to deter him and others in the same or similar situation from such wrongdoing in the future." *City Bank of Alabama v. Eskridge*, 521 So. 2d 931, 933 (Ala. 1988). Indeed, "there is nothing talismanic about such a demand that would per se satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." *Lambeth v. Peterbilt Motors Co.*, No. 12-CV-0169-WS-N, 2012 WL 1712692, at *4 (S.D. Ala. May 15, 2012). Further, the Eleventh Circuit has ruled that a demand for both compensatory and punitive damages does not make it facially apparent that more than $75,000 is in controversy. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001) (in case where complaint demanded general, special, and punitive damages for permanent physical and mental damages, in addition to medical expenses, lost wages, and diminished earning capacity for an indefinite period of time, holding that it was not facially apparent from the complaint that amount in controversy exceeded $75.000); *see also Blount v. Coe Mfg. Co.*,

6

No. CV 20-0182-WS-N, 2020 WL 1866190, at *2 (S.D. Ala. Apr. 14, 2020) (stating that defendant's assertion that a demand for punitive damages automatically makes it facially apparent from complaint that amount in controversy exceeds $75,000 was "flatly incompatible" with *Williams*).

Here, Defendant invites the Court to conclude that Plaintiff's bad faith claim and demand for mental anguish and punitive damages push the amount in controversy above $75,000. "To make this leap, the defendant relies on results in other cases." *Id*. at *2. The Court rejects this argument for the same reasons it was rejected in *Blount*, *supra*. In that case, after the plaintiff's hand was injured and part of his finger amputated, he sought compensatory and punitive damages for the loss of his finger, pain and suffering, lost wages, mental distress, and medical expenses of almost $25,000. *Id*. at *1. The defendant cited four trial court opinions to suggest that a hand or foot injury makes it facially apparent that the amount in controversy exceeds $75,000 even when punitive damages are not sought. However, the court pointed to two Eleventh Circuit cases demonstrating "a pronounced judicial skepticism of results in other cases as a means of satisfying a removing defendant's burden of showing that the amount in controversy exceeds the jurisdictional amount." *Id.* at *3.

In the first case, *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 809 (11th Cir. 2003), the plaintiff sued the defendant insurer, demanded the $50,000 policy limits, and threatened to sue for bad faith. *Id*. at 806. Although the plaintiff had represented that he would not accept more than $74,000, the defendant cited other cases where more than $75,000 was awarded on bad faith claims. The Eleventh Circuit was unpersuaded,

stating that a "mere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature of [the defendant's] assertion in this case." *Id*. at 809.

In the second case, *Lowery v. Alabama Power Co.,* 483 F.3d 1184 (11th Cir. 2007), the removing defendant under CAFA noted that plaintiffs in recent mass tort actions in Alabama had received jury verdicts or settlements for more than the jurisdictional amount. *Id.* at 1189. The court rejected this argument because it had not come from the plaintiffs, but it went on to "question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit." *Id.* at 1221. The court further noted that other verdicts are certainly inadequate to carry a removing defendant's burden when the defendant fails to provide details about the other cases, when there are no specific details about the instant action, or both. *Id.* When there is insufficient information to compare the cited cases and the removed case, a court cannot "possibly ascertain how similar the current action is to those the defendants cite." *Id.; see also Pretka*, 608 F.3d at 753 (the *Lowery* defendants were unsuccessful because they "failed to explain the facts of those other tort cases or link them to the facts of the *Lowery* case"); *Snellgrove v. Goodyear Tire & Rubber Co.*, No. 4:13-CV-2062-VEH, 2014 WL 235367, at *6 (N.D. Ala. Jan. 22, 2014) (where defendants did not demonstrate similarities between cited cases and pending case, holding that cited cases did not help carry defendants' burden); *Stewart v. State Auto. Mut. Ins. Co.*, No. 4:19-CV-01144-CLM, 2020 WL 58449, at *3 (N.D. Ala. Jan. 6, 2020) (holding that a "comparison of past awards rendered in cases involving bad faith claims over a nearly thirty-year period is insufficient to establish an amount in controversy, especially when said cases contain distinguishable facts").

The same is true here, and the cases cited by Defendant do not help carry its burden. They involve fraud claims, not bad faith claims, and were decided a quarter of a century ago. *See Ford Motor Co. v. Sperau*, 708 So. 2d 111 (Ala. 1997); *First Com. Bank v. Spivey*, 694 So. 2d 1316 (Ala. 1997); and *Jackson v. Am. Bankers Ins. Co. of Fla.*, 976 F. Supp. 1450 (S.D. Ala. 1997). Further, other than providing the amounts of the verdicts, Defendant has provided no facts or analysis of the cases that would allow the Court to compare them to this case. Doc. 13 at 10. As such, they are no use in establishing the value of Plaintiff's bad faith claims or his mental anguish or punitive damages demands.

Thus, Defendant essentially asks the Court to presume the mere existence of a bad faith claim and request for mental anguish and punitive damages places more than $75,000 in controversy, but the Court cannot indulge in that type of guesswork. *Pretka*, 608 F.3d at 752 (stating that "[t]he absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars") (citations and internal quotations omitted). Notwithstanding Plaintiff's bad faith claim and request for mental anguish and punitive damages—and contrary to Defendant's characterization—the actions described in the Complaint are not "particularly egregious."[2] In fact, the bad faith count contains nothing more than conclusory allegations of Defendant's conduct. For instance, Plaintiff alleges Defendant created its own debatable reason for rejecting his claim, but there are no details

---

[2] In its brief opposing remand, Defendant recites Plaintiff's bad faith allegations and describes them as "particularly egregious." Doc. 13 ¶ 15. Defendant also declares that Plaintiff "will seek a maximum punitive award" in this case, but this statement is merely speculation on Defendant's part. *Id.*

about this debatable reason. Doc. 2-1 at 10. Plaintiff asserts the Defendant created and fabricated a scheme for the sole purpose of denying his claim, but there are no facts describing the alleged scheme. *Id*. Plaintiff alleges Defendant relied on an ambiguous part of the policy to deny coverage, but there are no details about this part of the policy. *Id*. Plaintiff alleges that Defendant intentionally and recklessly failed to abide by the policy, investigate the claim, marshal facts, etc., but the Complaint also describes how Defendant engaged the services of adjusters and engineers to inspect the property and then made disbursements based on those assessments. *Id*. at 5–6, 10.

Accordingly, this case appears to be a garden-variety homeowner's insurance claim, and it is not facially apparent from the Complaint that more than $75,000 is in controversy.[3] *See Davis v. Ray*, No. 2:19-CV-932-WKW, 2020 WL 1916170, at *3–4 (M.D. Ala. Apr. 20, 2020) (noting that the complaint did not contain any non-conclusory allegations of the defendants' wanton behavior and refusing to estimate the value of the plaintiff's punitive damages request by engaging in speculation). Therefore, under the circumstances of this case and because removal principles mandate strictly construing the applicable removal

---

[3] For comparison, in *Watts v. SCI Funeral Servs., LLC*, No. 2:19-CV-01219-JHE, 2020 WL 1310559 (N.D. Ala. Mar. 18, 2020), which involved the burial plot of a child, the plaintiffs alleged "emotional distress so severe that no reasonable person should be expected to endure it," in addition to "shock, dismay, indescribable heartache, anger, frustration, humiliation, embarrassment, shame, guilt and grief that no reasonable person should be expected to endure at one of the worst moments a human being faces, i.e. burying their child." *Id*. at *4–5. The court held that, while not every outrage claim is sufficient to permit an inference that more than $75,000 is at issue, the allegations of an intentional, permanent desecration of a burial plot, coupled with the punitive damages claim, supported that inference. *Id*. at *5. *See also* R*ogers v. Hartford Life & Acc. Ins. Co.*, No. 12-CV-19-WS-B, 2012 WL 887482 (S.D. Ala. Mar. 15, 2012) (finding that amount-in-controversy requirement was met where wife, whose husband suffered from smoke inhalation in house fire and died after extended hospital stay, sued insurer for $51,000 policy limits alleging insurer committed fraud by misrepresenting the policy's waiting period and making her believe she was ineligible for policy benefits).

statute, resolving doubts in favor of remand, and placing the burden of establishing jurisdiction on defendant, the Court cannot conclude the value of Plaintiff's claims exceeds the jurisdictional threshold without engaging in impermissible speculation.

## IV. CONCLUSION

The Court finds that Defendant has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000, and it is ORDERED as follows:

1. Plaintiff's Motion to Remand (Doc. 6) is GRANTED;

2. All pending motions are DENIED as moot;

3. This action is REMANDED to the Circuit Court of Elmore County, Alabama; and

4. The Clerk of the Court is DIRECTED to take all steps necessary to effectuate the remand.

Done this 19th day of October, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE